James W. Carbin, Esq. (JWC-5004)
A Delaware Limited Liability Partnership
744 Broad Street, Suite 1200
Newark, NJ 07102-3889
Tel. 973.424.2000
Fax (973) 424-2001
Attorneys for Plaintiff
Factory Mutual Insurance Co.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| FACTORY MUTUAL INSURANCE CO., | **CIVIL ACTION** |
| Plaintiff, | C.V. NO.:   04cv7748 (RJH) |
| -against- | |
| SUNGARD SHERWOOD SYSTEMS, | **COMPLAINT AND** |
| f/k/a Sherwood International Group LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, Factory Mutual Insurance Co. ("FM Global"), by its attorneys, brings this Complaint against Defendant, SunGard Sherwood Systems f/k/a Sherwood International Group LLC ("SunGard") alleging upon information and belief as follows:

### The Parties

Plaintiff, FM Global, is a mutual insurance company organized and existing and with its principal place of business at 1301 Atwood Avenue, Johnston, Rhode Island 02919.

1)      Defendant, SunGard, is a corporation organized and existing under the laws of a state other than Rhode Island with its principal place of business at 200 Business Park Drive, Suite 203,

Armonk, NY 10504 and conducts substantial business in the state of New York.  SunGard is engaged in the design, development, marketing and sale of computer software programs, including software for the insurance industry.

2)      FM Global brings this action against SunGard for SunGard's failure to provide usable reinsurance software applications and related necessary services in violation of the contracts, as well as expressed and implied agreements between the parties, and contrary to the expressed and implied representations made by SunGard to FM Global.

3)      FM Global entered a Software License Agreement, Maintenance Agreement and Professional Services Agreement with SunGard on August 28, 2000, by which SunGard committed to and represented it would convert FM Global's existing SICS reinsurance software program, which had previously been developed and supplied by SunGard,  to a fully-functional, state-of-the-art reinsurance solution applying SunGard's Senator and ProCede applications  respectively.

## JURISDICTION AND VENUE

4)      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based upon the parties diverse citizenship and the amount in controversy in excess of $75,000.00, exclusive of interest and costs.

## FACTS

5)      SunGard had previously contracted with FM Global to supply and service the SICS reinsurance software application for FM Global's assumed and ceded reinsurance operations.

6)      SICS is a DOS-based reinsurance software application developed by SunGard.

7)      In and around 1999, SunGard gave notice to its then current SICS subscribers, including FM Global, that SunGard intended to discontinue support of SICS in 2001.

8)      SunGard developed other software programs to replace the SICS program.

9)      SunGard developed the Senator software program for assumed reinsurance business, and the ProCede software program for ceded reinsurance business.

10)     SunGard developed the Senator and ProCede programs to be capable of operating together to seamlessly service both a company's assumed and ceded reinsurances business.

11)     SunGard marketed its Senator and ProCede client/server reinsurance solutions as a replacement for its SICS program to FM Global, amongst others.

12)     SunGard described Senator to FM Global and others as an assumed reinsurance management solution for professional reinsurers with modules for underwriting/pricing, premium processing, claim management, accounting, ceded reinsurance, statistical portfolio/performance analysis and management/statutory reporting, and ProCede as a reinsurance management solution specifically designed for ceded reinsurance.

13)     SunGard represented to FM Global that the Senator and ProCede programs were well-proven modern Windows based platforms, with graphical and relational databases.

14)     FM Global conducted an analysis of its then-existing and future computer software requirements and identified a number of software vendors that offered software that would meet and service the specific needs of FM Global's assumed and ceded reinsurance business.

15)     SunGard marketed the Senator and ProCede programs to FM Global representing that a critical step in the successful implementation of any new software for use by FM Global was the conversion of data from the format used by FM Global's existing SICS software to a format compatible with new software, including SunGard's Senator and ProCede applications.

In early 2000, SunGard represented to FM Global that it was able to convert the SICS program data to SunGard's Senator and ProCede applications to provide FM Global with a state-of-the-art system to enhance efficiencies and with increased economies.

SunGard represented to FM Global that because it had developed FM Global's existing SICS system and also had developed the Senator and ProCede applications, it was experienced in converting data from existing SICS systems to the Senator and ProCede applications at minimal cost and risk.

SunGard presented itself as an essentially risk-free alternative over their competitors in order to induce FM Global into licensing SunGard's Senator and ProCede software.

SunGard represented that their complete understanding of SICS, Senator and ProCede would result in a sizeable cost savings, in addition to an accurate and timely conversion.

SunGard represented that they had proven experience in successfully completing and testing conversions of SICS data for use by Senator.

To induce FM Global to license SunGard's Senator and ProCede software, the then President of Sherwood ISS (a predecessor company of Sherwood International Group), Brian Wilson, represented that SunGard's extensive experience in the dataconversion process essentially eliminated the risks associated with the data conversion necessary to operate new software

applications, including Senator and ProCede.

In a February 25, 2000 letter, SunGard made the following representations regarding the data conversion:

> **Conversion from SICS** – As you are aware, the highest risk in any project is the data conversion.
>
> We have developed generic data conversion software from SICS to SENATOR that is completed and tested by us on an existing client's data.  This generic data conversion software will be supplied to FM Global at **_no charge_**.
>
> We estimate the data conversion for any other vendor to successfully complete would be in the region of $300 - $500K.  After all, we have a complete understanding of both SICS and SENATOR.  In addition, we have much experience of converting from mainframe platforms as well as AS 400 platforms.
>
> In addition to the wealth of experience that exists in Armonk, the people in the UK (of which some are now permanently relocated in Armonk) have extensive experience of converting from other systems to SENATOR.  Sherwood has successfully carried out in excess of 10 data conversions from other systems to SENATOR in the last 6 years.  This has included converting from competitor systems and in house developed systems such as IBM Mainframes.  we have completed several conversions from the Unisure Systems and are adept on the details of this type of conversion.
>
> **We believe we are in the best position to keep the risk reduced to an absolute minimum for FM Global, which by definition, also means the lowest cost.**

(emphasis in original).

In an effort to induce FM Global to license SunGard's software, SunGard wrote in a March 1, 2000 letter that SunGard had an advantage over competitors in that FM Global would not have to wait years for new software because SunGard's products were already proven and ready for use.

The March 1, 2000, letter made clear that the data conversion from SICS to Senator was "essential for a successful implementation."  SunGard further represented the following regarding the necessary conversion effort:

> We have already developed the generic conversion programs for SICS Senator and demonstrated these to you.  The programs will realistically need modification and tweaking to meet your specific data requirements, but have been **proven** to convert from SICS to Senator.  Your cost savings with our conversion, compared to any of our competitors, should be at least $300,000 - $400,000.  The accuracy and timeliness of the conversion would be unsurpassed for us to convert SICS.  We have experience in converting from a number of competitor systems including 4 from the other system you are looking at.  We have vast experience in conversions and have gained knowledge and proficiency in our competition's file structures.

(emphasis in original).

Throughout the discussions regarding FM Global's prospective license of SunGard's software and services, SunGard repeatedly represented that all aspects of the data conversion, implementation and servicing of the Senator and ProCede systems would be subject to ' Control Standards and Practices, as well as  Quality Assurance testing before delivery to FM Global.

Throughout the discussions of FM Global's prospective agreement with SunGard for its products and services, SunGard represented that they would properly plan and manage all aspects of the project and would ensure that all appropriate resources were properly utilized to complete the project in an efficient and timely manner.

In reliance upon SunGard's representations, FM Global selected SunGard as its software

vendor and consultant, and contracted for the conversion of its existing SICS system to the Senator and ProCede applications with SunGard.

Based upon the representations of SunGard, FM Global contracted with SunGard on August 28, 2000, for a five (5) year term Software License Agreement ("SLA") for use of the Senator and ProCede software applications (The SLA is attached hereto as Exhibit "A"); a five (5) year term Professional Services Agreement ("PSA"), (The PSA is attached hereto as Exhibit "B"); a five (5) year Maintenance and Support Agreement ("MSA"), (The MSA is attached hereto as Exhibit "C") for FM Global's business operations.

The SLA also required FM Global to license certain additional third party software at FM Global's cost.

SunGard agreed to perform the conversion of data from SICS to the Senator and ProCede applications.

On or about November 16, 2000, SunGard hosted a kick-off meeting at FM Global's Waltham, Massachusetts offices.  At the meeting, the parties agreed that the implementation of the Senator and ProCede software, including the data conversion process, would be completed by July 2002.

SunGard installed the Senator and ProCede software at FM Global's Waltham offices on or about April 10, 2001, while acknowledging the programs could not be used by FM Global until SunGard accurately completed the SICS data conversion.

Over the course of the Project, the "Go-Live Date", when the Project would be completed and the system would be available for use by FM Global, was continually extended by SunGard from July 2002 to November 1, 2002; November 29, 2002; December 30, 2003; April 28, 2004; May 20,

2004; and July 30, 2004.

The Senator and ProCede software programs could not be used until SunGard delivered a fully converted, accurate and implemented database and system.

Despite the passage of nearly four (4) years and the payment of over $1.7 million to SunGard under the Agreements, SunGard has failed to deliver an operable Senator or ProCede application to FM Global.

SunGard has failed to complete the SICS data conversion.

SunGard has failed to supply a functioning Senator application for FM Global's business.

SunGard has failed to supply a functioning ProCede application for FM Global's business.

SunGard has failed to supply Quality Assurance, qualified personnel, and adequate project management throughout the Project.

Throughout the Project, SunGard presented to FM Global what it claimed was portions of the SICS data in an accurate and quality tested format.  FM Global monitored and tested the portions of the data conversion supplied by SunGard as the Project advanced.  Throughout the course of the Project, FM Global repeatedly discovered numerous critical problems and deficiencies with the partial data conversion presented by SunGard which deprived FM Global of the use of Senator and ProCede.

On countless occasions, FM Global informed SunGard of the Quality Assurance issues that consistently delayed the project.  SunGard repeatedly promised FM Global that it would remedy the situation and would conduct more thorough quality assurance prior to its deliveries to FM Global.

Throughout the Project, SunGard removed key project personnel assigned to the FM Global project and replaced them with inexperienced and/or incapable personnel who had to learn the Project details anew, causing significant delays and further complications.

During the course of the Project, SunGard assigned five (5) different project managers to work on the FM Global project, many of whom did not have the experience necessary to properly manage the project.

During the course of the Project, SunGard failed to provide adequate project management and assigned unqualified and/or an inadequate number of business and technical resources to FM Global's project.

During the course of the Project, SunGard failed to meet their own deadlines and progress steps as set forth in their Work Orders, resulting in significant delays.

On January 31, 2003, in an effort to mitigate their recurring project delays and problems, SunGard proposed that FM Global incur the cost of a full-time on-site consultant, Angus Botham, a SunGard business analyst with both Senator and ProCede experience, at FM Global's offices for a six-month engagement. SunGard represented that with Angus Botham on-site, the Project would be completed in six (6) to nine (9) months.

FM Global followed SunGard's recommendation and incurred the additional cost of engaging Botham on-site.

Botham remained on-site in FM Global's Waltham offices for over thirteen (13) months, at which time SunGard directed his return to their Armonk, NY office, despite the fact that the FM Global project was uncompleted.

In response to FM Global's numerous complaints regarding the delays in the Project

completion, cost overruns, extended time, repeatedly missed deadlines and continuous quality deficiencies in the product and services presented, SunGard reassured FM Global that it would correct the deficiencies, provide better Project management; assign qualified personnel, devote resources to the Project; and provide proper Quality Assurance prior to delivering converted data and application executables to FM Global.

In reliance upon SunGard's assurances, FM Global acquiesced to the repeated extensions of the Project completion ("Go-Live Date"), when FM Global could begin to use the Senator and ProCede software in its business.

As a result of the numerous functionality, quality and data related problems, FM Global remains unable to use the Senator and ProCede software in its business.

Throughout the Project, SunGard continued to bill FM Global for maintenance fees and professional service fees associated with the Senator and ProCede software, each time assuring FM Global that the conversion was near completion and the system would soon be fully functional.

FM Global paid SunGard in excess of $1.7 million in fees during the Project in addition to the other charges and costs necessitated by the Project at a meeting on April 19, 2004, after repeated failed attempts by SunGard to produce an operable system, with accurate and complete converted data, FM Global cancelled the Project and the Agreements with SunGard and demanded reimbursement of all fees and expenses related to the Project.

FM Global confirmed its cancellation and demand for refund of funds paid by letter dated May 14, 2004.

In a May 28, 2004 letter to FM Global, SunGard's CEO Gavin Lavelle asserted that SunGard had resolved those Project issues logged as of April 16, 2004, and committed to produce a completed

data conversion to FM Global no later than June 11, 2004.

SunGard failed to provide FM Global with complete and accurate conversion data by June 11, 2004.

SunGard's failure to deliver usable  Senator and ProCede applications, including an accurate and complete data conversion from SICS, caused FM Global to suffer through years without the improved efficiencies and enhancements it was promised, and to incur the fees and charges billed by SunGard for the SLA , the MSA and the PSA Agreements and other additional required charges and costs, because of SunGard's failure to provide a properly functioning and operational system despite its many representations that it was able to do so efficiently and economically.

SunGard's failure to deliver the system and to complete the  data conversion as promised, free of  conversion and functionality errors, has and continues to cause FM Global significant loss of efficiencies, extra costs and expenses,  including the disruption of its operations, and deprived FM Global's of the value of its previous substantial investment in SunGard's products, software, services and maintenance.

SunGard is currently developing a new assumed reinsurance application to replace  the Senator software application.

SunGard's termination of its marketing of the Senator software is due to SunGard's repeated failures to convert North American clients to the Senator software application.  .

SunGard negligently, grossly negligently, falsely, intentionally, maliciously, fraudulently or otherwise wrongfully misrepresented to FM Global that it was capable and had successfully converted SICS data for use with the Senator, and that it could do so efficiently and economically for FM Global, in order to induce FM Global to enter into the Agreements made, or to continue with

the Agreements after made, all to continue to elicit  funds from FM Global despite the inability to deliver an operable, and error-free  system as represented and warranted.

As a result of SunGard's actions and inactions, FM Global has incurred and lost substantial hours of its employees' time and production having to test and retest the errant, defective, and non-performing substandard materials, products and information presented by SunGard, and has also been caused to incur extraordinary costs in both time and expense in addressing those issues with SunGard.  In addition, FM Global has and/or will sustain other substantial losses and damages as a result of SunGard's actions and inactions.

## COUNT I

## BREACH OF CONTRACT

FM Global repeats and incorporates herein by reference each of the allegations set forth in Paragraphs 1 through 63 above.

FM Global and SunGard entered into a SLA pursuant to which SunGard agreed to license the Senator and ProCede software applications and also to convert FM Global's Runoff Operations data from its existing reinsurance software, SICS, to a form compatible with SunGard's Senator and ProCede software applications for use in FM Global's business.

SunGard entered into this agreement with FM Global with knowledge that FM Global was investing significant monies in SunGard's software and services.

FM Global fulfilled its responsibilities under the terms of its contracts with SunGard, including the payment of substantial fees under the SLA.

SunGard materially breached its obligations under the SLA.

FM Global has or will sustain substantial losses and damages as a result of SunGard's breach.

WHEREFORE, Plaintiff demands judgment against SunGard in an amount to be determined at trial, together with interest, attorney's fees and costs, and such other relief as the Court deems appropriate.

## COUNT II

## BREACH OF CONTRACT

FM Global repeats and incorporates herein by reference each of the allegations set forth in Paragraphs 1 through 69 above.

FM Global and SunGard entered into a PSA pursuant to which SunGard agreed to provide certain consulting services and also to convert FM Global's Runoff Operations data from its existing reinsurance software, SICS, to a form compatible with SunGard's Senator and ProCede software applications for use in FM Global's business.

SunGard entered into this agreement with FM Global with knowledge that FM Global was investing significant monies in SunGard.

FM Global fulfilled its responsibilities under the terms of its contracts with SunGard, including the payment of substantial fees under the PSA.

SunGard materially breached its obligations under the PSA.

FM Global has or will sustain substantial losses and damages as a result of SunGard's breach.

WHEREFORE, Plaintiff demands judgment against SunGard in an amount to be determined at trial, together with interest, attorney's fees and costs, and such other relief as the Court deems appropriate.

## COUNT III

## BREACH OF CONTRACT

FM Global repeats and incorporates herein by reference each of the allegations set forth in Paragraphs 1 through 75 above.

FM Global and SunGard entered into a MSA pursuant to which SunGard agreed to provide maintenance and support services related to the Senator and ProCede software programs and also to convert FM Global's Runoff Operations data from its existing reinsurance software, SICS, to a form compatible with SunGard's Senator and ProCede software applications for use in FM Global's business.

SunGard entered into this agreement with FM Global with knowledge that FM Global was investing significant monies for SunGard's software and services.

FM Global fulfilled its responsibilities under the terms of the MSA, including the payment of substantial fees under the MSA.

SunGard materially breached its obligations under the MSA.

FM Global has or will sustain substantial losses and damages as a result of SunGard's breach.

WHEREFORE, Plaintiff demands judgment against SunGard in an amount to be determined

at trial, together with interest, attorney's fees and costs, and such other relief as the Court deems appropriate.

## COUNT IV

## BREACH OF CONTRACT

16)   FM Global repeats and incorporates herein by reference each of the allegations set forth in Paragraphs 1 through 81 above.

17)   FM Global and SunGard entered into an agreement pursuant to which SunGard agreed to convert FM Global's Runoff Operations data from its existing reinsurance software, SICS, to a form compatible with SunGard's Senator and ProCede software applications for use in FM Global's business.

SunGard entered into this agreement with FM Global with knowledge that FM Global was investing significant monies in SunGard Senator and ProCede software programs, which could not operate unless and until FM Global's data was converted to an appropriate format.

The agreement required that SunGard deliver complete and accurate conversion data, which was operational and fully compatible with the SunGard software applications l.

FM Global fulfilled its responsibilities under the terms of its agreement with SunGard.

SunGard materially breached its obligations by failing to provide complete and accurate conversion data to FM Global.

FM Global has or will sustain substantial losses and damages as a result of SunGard's breach.

WHEREFORE, Plaintiff demands judgment against SunGard in an amount to be determined at trial, together with interest, attorney's fees and costs, and such other relief as the Court deems appropriate.

## COUNT V

### NEGLIGENCE

18)     FM Global repeats and incorporates herein by reference each of the allegations set forth in Paragraphs 1 through 88 above.

19)     AS described, SunGard committed to and represented it would convert FM Global's existing SICS reinsurance software program to a fully-functional, state-of-the-art reinsurance solution applying SunGard's Senator and ProCede applications respectively.

20)     SunGard did not do due to its negligence, gross negligence or other wrongful conduct or omissions were false, or otherwise made such representations with reckless disregard for their truth.

21)     SunGard's negligence, gross negligence or other wrongful conduct or omissions, caused FM Global to suffer extensive damages.

WHEREFORE, Plaintiff demands judgment against SunGard in an amount to be determined at trial, together with punitive damages, interest, attorney's fees and costs, and such other relief as the Court deems appropriate.

17

## COUNT VI

## FRAUD/CONSTRUCTIVE FRAUD

22)     FM Global repeats and incorporates herein by reference each of the allegations set forth in Paragraphs 1 through 92 above.

23)     As described herein, SunGard made numerous false representations of material fact to FM Global to induce FM Global to enter into agreements with it or to continue to maintain the agreements that had been made.

24)     SunGard knew or should have known that its representations were false, or otherwise made such representations with reckless disregard for their truth.

25)     SunGard knowingly concealed or misrepresented material facts deceiving, defrauding or otherwise misleading FM Global.

26)     SunGard made intentionally false representations/concealments with the intent to defraud, deceive or otherwise mislead and harm FM Global.

27)     FM Global justifiably relied on SunGard's representations.

28)     As a direct result of its reliance upon the misrepresentations, FM Global has suffered extensive damages.

WHEREFORE, Plaintiff demands judgment against SunGard in an amount to be determined at trial, together with punitive damages, interest, attorney's fees and costs, and such other relief as the Court deems appropriate.

## COUNT VII

## FRAUDULENT INDUCEMENT

29)     FM Global repeats and incorporates herein by reference each of the allegations set forth in Paragraphs 1 through 99 above.

30)     As described above, SunGard knowingly made false representations of material fact or concealed material facts or both to induce FM Global to enter into the SLA, MSA and PSA.

31)     SunGard knew or should have known the representations were false, or otherwise made such representations with reckless disregard for their truth.

32)     SunGard made these false representations and concealed material facts with the knowing or willful intent to induce FM Global to select SunGard as FM Global's software vendor and to induce FM Global to enter into and to continue with the SLA, MSA and PSA.

33)     FM Global relied upon the misrepresentations of SunGard and/or its representatives in selecting SunGard as a vendor, and in executing the SLA, MSA and PSA.

34)     FM Global justifiably relied on SunGard's representations.

35)     As a direct result of its reliance upon these misrepresentations, FM Global has suffered extensive damages.

36)     FM Global is entitled to rescission of the SLA, MSA and PSA.

WHEREFORE, Plaintiff demands judgment against SunGard in an amount to be determined at trial, together with punitive damages, interest, attorney's fees and costs, and such other relief as the Court deems appropriate.

## COUNT VIII

## NEGLIGENT MISREPRESENTATION

37)     FM Global repeats and incorporates herein by reference each of the allegations set forth in Paragraphs 1 through 107 above.

38)     SunGard made misrepresentations of material fact to induce FM Global to enter into the SLA, MSA and PSA.

39)     SunGard had a duty of care to FM Global in making the representations to FM Global regarding its representations.

40)     SunGard was negligent in the assertion of its false statements to FM Global and was negligent in concealing material facts from FM Global.

41)     SunGard made these false statements and concealed material facts with the intention of having FM Global act and otherwise rely upon them.

42)     SunGard knew that FM Global would rely upon, and in fact, did rely upon these negligent statements.

43)     As a result of SunGard's negligent misrepresentations and concealments, FM Global has incurred, and will continue to incur, substantial damages.

WHEREFORE, Plaintiff demands judgment against SunGard in an amount to be determined at trial, together with punitive damages, interest, attorney's fees and costs, and such other relief as the Court deems appropriate.

## COUNT IX

## UNJUST ENRICHMENT

44)     FM Global repeats and incorporates herein by reference each of the allegations set forth in Paragraphs 1 through 114 above.

45)     SunGard has been unjustly enriched by its receipt of the monies FM Global tendered under the terms of the SLA, MSA and PSA.

46)     FM Global conferred significant monetary benefits upon SunGard pursuant to the SLA, MSA and PSA.

47)     SunGard was aware of, and had knowledge of, the benefits conferred upon it by FM Global through these payments.

48)     SunGard's acceptance and retention of these monetary payments by FM Global, when it knew or should have known that it could not deliver complete and accurate conversion data, rendering  FM Global's license of the Senator and ProCede software programs useless, was unjust and inequitable.

49)     Under these circumstances, SunGard's receipt and retention of the money would be unjust.

50)     FM Global is entitled to disgorgement and restitution of all economic benefits which SunGard derived from FM Global.

WHEREFORE, Plaintiff demands judgment against SunGard in an amount to be determined at trial, together with interest, attorney's fees and costs, and such other relief as the Court deems appropriate.

## COUNT X

## PROMISSORY ESTOPPEL

51)     FM Global repeats and incorporates herein by reference each of the allegations set forth in Paragraphs 1 through 121 above.

52)     SunGard promised FM Global that it would provide the Senator and ProCede software applications and an accurate and complete data conversion to replace the outdated SICS application for use in FM Global's business.

53)     In the absence of an express contractual obligation, SunGard made numerous promises of a definite and specific nature, as described herein, to FM Global and upon which FM Global reasonably relied to its detriment.

54)     SunGard fully expected FM Global to rely on such promises.

55)     By making such promises, SunGard induced FM Global's reasonable reliance.  FM Global's reliance was of a specific nature.

56)    Based on SunGard's assurances and representations, FM Global entered into and continued the SLA, MSA and PSA and  maintained an ongoing relationship with SunGard.

57)    FM Global would not have entered into or continued the SLA, MSA and PSA with SunGard had it known that SunGard was incapable of providing FM Global with fully operational applications, including accurate and complete converted data from the SICS system,  and that SunGard would not or could not convert FM Global's existing SICS data in a timely and effective manner sufficient to satisfy FM Global' business needs.

58)    SunGard breached its promises as described herein.

59)    FM Global incurred or will incur substantial damages including but not limited to expending valuable employee time and resources.

WHEREFORE, Plaintiff demands judgment against SunGard in an amount to be determined at trial, together with interest, attorney's fees and costs, and such other relief as the Court deems appropriate.

## COUNT XI

## FAILURE OF ESSENTIAL PURPOSE

60)    FM Global repeats and incorporates herein by reference each of the allegations set forth in Paragraphs 1 through 130 above.

61)    SunGard has failed to deliver the product or service represented to FM Global thereby depriving FM Global of the value of the systems and benefits expected therefrom.

62)     As a result of the deprivation of the essential purpose of the products and services, FM Global has suffered substantial damages.

WHEREFORE, Plaintiff demands judgment against SunGard in an amount to be determined at trial, together with interest, attorney's fees and costs, and such other relief as the Court deems appropriate.

## COUNT XII

### FAILURE OF FITNESS FOR PARTICULAR PURPOSE

63)     FM Global repeats and incorporates herein by reference each of the allegations set forth in Paragraphs 1 through 133 above.

64)     The products and services provided by SunGard failed to fulfill the particular purposes for which FM Global agreed, in reliance upon SunGard's representation, to procure them causing FM Global substantial damage.

WHEREFORE, Plaintiff demands judgment against SunGard in an amount to be determined at trial, together with interest, attorney's fees and costs, and such other relief as the Court deems appropriate.

## COUNT XIII

FAILURE OF MERCHANTABILITY

65)     FM Global repeats and incorporates herein by reference each of the allegations set forth in Paragraphs 1 through 135 above.

66)     The products and services provided by SunGard failed to fulfill or to conform to the purposes for which the goods and/or services were provided, or to the representations made for FM Global's purposes in agreeing, causing FM Global substantial damage.

WHEREFORE, Plaintiff demands judgment against SunGard in an amount to be determined at trial, together with interest, attorney's fees and costs, and such other relief as the Court deems appropriate.

## COUNT XIV

## BREACH OF DUTY OF GOOD FAITH

67)     FM Global repeats and incorporates herein by reference each of the allegations set forth in Paragraphs 1 through 137 above.

68)     SunGard had a duty of Good Faith to perform the agreements made and to fulfill the representations it made to FM Global to ensure FM Global received the benefits it was led to expect. SunGard's failures, breaches and wrongful conduct as described herein have violated such a duty, entitling FM Global to bad faith or punitive damages or both.

WHEREFORE, Plaintiff demands judgment against SunGard in an amount to be determined at trial, together with interest, attorney's fees and costs, and such other relief as the Court deems appropriate.

## COUNT XV

## PUNITIVE DAMAGES

69)     FM Global repeats and incorporates herein by reference each of the allegations set forth in Paragraphs 1 through 139 above.

70)     SunGard's intentional, malicious, willful, knowing actions or inactions, as described herein, are of such a nature as to entitle FM Global to an award of Punitive or Exemplary damages

WHEREFORE, Plaintiff demands judgment against SunGard in an amount to be determined at trial, together with interest, attorney's fees and costs, and such other relief as the Court deems appropriate.

## RELIEF REQUESTED

WHEREFORE, plaintiff FM Global demands judgment against SunGard in an amount to be determined at trial of at least $2,500,000 plus the additional costs and fees necessitated by the Project, the lost value based upon the unavailability of the Applications, the value for the lost efficiencies and enhancements during the five year period, the value of the lost time and expense occasioned by its employees, the value of replacement system as FM Global is required to procure, and other costs, charges and damages all to be determined at trial, together with and awards for breach of the duty of good faith, punitive damages, as well as interest, and the attorney's fees and costs incurred herein, and such other relief as the Court deems just.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues triable of right by a jury.

Dated: September 30, 2004
       Newark, New Jersey

Respectfully submitted,

DUANE MORRIS, LLP
A Delaware Limited Liability Partnership


By: _____

James W. Carbin, Esq. (JWC-5004)

744 Broad Street, Suite #1200
Newark, New Jersey 07102-3889
(973) 424-2000
Attorneys for Plaintiff
Factory Mutual Insurance Co.

## **CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

I certify that the matter in controversy is not the subject matter of any action pending in any

Court, or in any arbitration or administrative proceeding.

Dated: September 30, 2004        By:   _____
       Newark, New Jersey                    James W. Carbin, Esq. (JWC-5004)